Our fourth case for this morning is Theresa Hill v. City of Chicago. Mr. Spivak. Good morning, Your Honor's Counsel. Your Honor, Judge Pallmeyer assumed for purposes of deciding summary judgment that the city certified not merely that it had formulated an equal opportunity plan, an affirmative action plan, but that the plan had been implemented. She found that the plan had been implemented at least so far as the city did not make a false statement for purposes of the False Claims Act. I think my big problem here today, though, stems from the fact that although we contend that the certifications are false and the certification said that the city had formulated an equal opportunity plan, even though I know, because I have a copy of it here, there is such a thing as an equal employment opportunity plan. So you're not contesting that, despite some hints in your brief? No, Your Honor. What we're suggesting is that the plan was basically ephemeral. It was written in disappearing ink. Counsel, let me tell you what I understand you to be arguing. Maybe you can correct me if I'm wrong. You seem to be arguing that what the federal government really wants is bureaucracy, bureaucracy, and bureaucracy all the way down, and that if a local government doesn't follow its plans and do everything by the book, it's committing fraud. No, Your Honor, I wouldn't go that far. I think... You don't doubt that Chicago has equal opportunity rules, guidelines, and policies. It's got a whole office devoted to that. Yes, it does. But your complaint is the office doesn't do things by the book. It muddles through pragmatically. Usually we view that as, oh, my goodness, some relief, because otherwise if bureaucracies do everything by the book, they never get anything done. Your Honor, I think you take it too far. I think that the law requires that there be some sort of affirmative action plan. That's a requirement of the federal regulations. And they're not only a plan, which you hold in your hand, but they've got an office devoted to enforcing that goal, but not by following the plan. And let me just interject. That's true. Yes, Judge. The plan has what I'll just call some major headings, if you will, things that it wants. It wants outreach to minority and women communities. It wants statistical things. And the city has this big list, this giant list of bullet points on page 15 and 16 of its brief, which taken as a whole, look to me like they touch all the bases that this plan has. And so I want to know, are you contesting one or more of these bullet points, or is it just that they don't, as Judge Easterbrook is implying, match up well enough to certain sections of the plan? I mean, what's the problem? I think what I am contesting, Your Honor, or suggesting is that, yeah, I think the city had a compliance department. The city, I'm sure, did certain things, even maybe some of the things that they talk about, to comply with affirmative action requirements or things that the city felt were important. But what the city certified was that it had a plan that it was following, and that plan was really not in existence. It was not followed. It's not in existence. You've got a copy of it. I know, Judge, but I'm using the word ephemeral. It's written in disappearing ink. The fact of the matter is— It's in black and white. You've got a copy of it. Your argument— But in reality— Look, your argument is that the city has a plan that it doesn't follow. We would be a lot clearer if you just spoke of it that way. It exists, but they do something else. They don't govern themselves by the book. They do not govern themselves by the plan. And so that's why we're trying to focus on the fact— I mean, I think if—counterfactually, I believe, if the plan that you have in front of you existed and there was absolutely nothing in the city of Chicago that did anything to implement that plan, you might have a case because the plan itself would just be window dressing for an underlying lack of compliance. But our case is far more complicated than that because the city has all sorts of things. The city has these affirmative action offices, and they analyze employment patterns, and they have diversity committees. In fact, my offhand recollection is that the city has been sued more often for violating equal protection with its affirmative action plans, and it's been sued for not having enough. So I'm just not sure that the scenario you paint is the one that the record shows. Judge, the plan calls for a commissioner of personnel to be the point person for the plan. And do we really care if it's this equal opportunity office instead of the commissioner of human resources or commissioner of personnel? Your Honor, one, I think it says something about the way the city thinks about its plan, the fact that they've never changed the fact that there is no commissioner of personnel, which I think is one of the reasons to suggest that this plan is ephemeral. I think, secondly, the commissioner of personnel, or wherever that person, this Jacqueline King, who acceded to doing those, took that role, so to speak, when asked about is she aware of the plan, she's the point person on the plan and says, you know, it wasn't my area of expertise. She basically says she has no idea. About the plan. The district court comments on that, but why? It looks to me as though it's really just because the city has farmed out that responsibility in somewhat different ways, i.e. it's not doing it by the book, as Judge Easterbrook said. But I think that what the government requires and what it's asking for is that it not be something that could just, well, we're covering it in other places. The false claim. Is it fraudulent to say, yes, we have a plan, and to know in your own mind that the city is doing all sorts of affirmative action things? That's kind of the worst I can come up with in terms of these certifications. They certify, yes, we have a plan. You didn't ask us how we're implementing it. We're kind of doing it our way, but, you know, we haven't updated the plan to reflect the on-the-ground reality. I think it's deeper than that, because it doesn't reflect the on-the-ground reality. But if you look at the plan, the first three sections that talk about what's supposed to be part of the plan, the commissioner of personnel and what the commissioner of personnel is supposed to do, that person doesn't even know about the plan. It talks about there's a director of affirmative action. The commissioner of personnel, who is the point person on the plan, doesn't even know who the director of affirmative action is. She suggests it could be someone, you know, that maybe is doing some of these things, but she doesn't know who it is. There's supposed to be an affirmative action advisory council. She's supposed to be the chair of the affirmative action advisory council. She doesn't know anything about it. She mentioned that maybe the people that are involved with implementing it, like Mark Devane was one of the people at the city. He said, I never saw the plan. It looks vaguely familiar. I don't know anything about an affirmative action council. I think when the main points of the plan, the first three things they talk about, basically don't exist, that this is worse than just simply saying, well, it hasn't been implemented. It really exists on paper only. It's a draft. It's a draft of a plan, and there's no intent to implement it, to follow it. And I think that is what the government wants. They want the fact that a plan that is being followed, this plan is basically not in effect. That's our argument, Your Honor. Okay. You might want to save a minute for a second. That's what I'd like to do. Thank you. Okay. Thank you. Mr. Filer. May it please the court. Ms. Hill's characterization of her argument is that the city's plan was never purely on paper. But that entire argument fails under the False Claims Act for two reasons. First, the city never certified implementation of its plan. There is no such requirement in the federal regulations for such a certification in the first place. But I have to interrupt and say that part of your argument makes me uncomfortable because it sounds like the city can say, sure, we wrote a plan, but I can't believe the purpose of this regulation is to say that you sat down and wrote a plan, which you then put under the tallest stack of papers on your desk and proceeded to ignore forever. So that does strike me as, yes, we did the window dressing, but we're not doing anything else, is kind of an unattractive argument. To respond to that point, Judge, it's the difference here in the regulations between the certification requirement, which is in 42.305, and an implementation requirement, which is 42.308. I get that. I mean, you said that in the brief. Yes. But it seems to me that when the federal government wants a certification that there's an affirmative action plan as a condition of getting federal dollars, it doesn't mean what I just described, where people nitpick down to the subsection of regulations. Far more persuasive to me, anyway, was the idea that labels to one side the city was willing to certify because people were comfortable that it somehow or another was actually doing these things. And that's exactly where I was going, Your Honor, with what was going to be my second point, that the city did implement its plan. That, as the court noted on 15 and 16, we have an extensive bullet point list of everything the city did. This is from the record, the evidence that Ms. Hill introduced herself. All these steps the city took to implement its plan, they created this council. Mr. Ward testified that he was involved in this council. He named people who were involved. Extensive efforts to implement this plan. And Ms. Hill offers absolutely nothing to counter any of that. And remind me, are we talking about 2004 to 2008? I believe so, no later than 2008, which is approximately when Ms. King left the city as well. In Section 304, which asks about things such as job classification, table disciplinary actions, individuals by race, sex, and national origin, applying for employment, has the city complied with that? Yes, and that's reflected in the record. And that's also the way that this Section 305, the certification, indicates the city has formulated a plan in accordance with certain formalistic requirements that it has to have certain studies conducted, has to set out certain things that are written on paper. There's no dispute here that all of that was done, that the plan as it exists in four corners of the document is wholly sufficient. And that's what the city is certified to here in 305. And that includes Section 304. Wouldn't the city make life easier on itself if it did actually take some care to correlate what it's doing with these plans? I mean, it gets a lot of money from the federal government after all. You would think that a little bit closer compliance would be a good idea. I believe that there is such. That is a good idea, of course, but I believe that such compliance is reflected in the record here. And there's just nothing to create an issue of fact for the jury to consider. The one inconsistency that Hill focuses on, again, an argument here is that the name of the commissioner hadn't been updated, that it wasn't changed from personnel to human resources. But King testified that she assumed the responsibilities of the Department of Personnel. Right, but then King also says, I have no idea what's going on, and everybody seems to be caught flat-footed when Hill raises these issues. King orders a, you know, she trusts what Hill says, so she orders an investigation into whether there is some issue, and then that goes off into the bureaucracy. You can see why there's a lack of confidence that there is a serious plan. If it weren't for the system the city had set forth, Commissioner King testified at some length how there was a delegation of responsibility across the board. And the plan itself reflects this, the Director of Affirmative Action, that it was down to the individual departmental levels, had individuals assigned by the plan to take care of things on the ground. What if the federal government didn't have that in mind? You know, it thought that some highly placed person in the municipalities to which it gives money, including the city of Chicago, should be in charge of the Anti-Discrimination Affirmative Action, Equal Opportunity Affirmative Action Plan. And the city of Chicago doesn't do that. It sends it down to, you know, rather mid-level managers or something. I don't believe that that would be problematic. I don't believe the federal government imposes such a requirement in the first place. It seems very broad requirements are set forth in these regulations. There's nothing to that level of detail. It's either you have a plan on file or you send us a plan. There are two separate branching forms of maintenance of these plans. Either the federal government approves of them or they're formulated and put on file with a certification of such. But there's nothing to that level of detail that requires. So you think any kind of plan would be that they're not doing substantive review of anybody's plan? Sorry? The federal government is not saying your plan is good, your plan is bad? I believe in some instances they are. As I understand it, local governments and certain other entities, I'm not sure of the exhaustive list, that receive over a certain amount of, there's a certain calculation for amount of grants that are at issue. Some have to submit a plan for approval within a certain period of time. Others are exempt from that requirement. And as the government indicates on its website regarding this program, merely have to certify that one has been formulated, put in place, and that it's in an accessible area that the federal government or the public at large can review that plan. And that was the certification. That latter certification is what was involved here. And this Executive Diversity Committee that King was supposed to serve on, there is no evidence that it ever met, right? Or who was on it? Oh, there is evidence that that met. I believe you're referring to the council, unless I'm misunderstanding. And that was Mr. Ward's testimony, that that council met. He named several individuals that met with him. And his testimony was quite clear. He didn't recall some of the real nitty-gritty details that we would submit are completely immaterial. He didn't remember who appointed him. He didn't remember the exact dates. But some of these things are going back seven, eight years at this point. So it's not a huge surprise that he wouldn't be able to zero in on those details. But he did remember he was unwavering in the fact that they met and they discussed these issues. And I believe that there are even minutes of some sort at the end of some of the factual submissions here talking about what was discussed at some of the meetings that were held regarding equal employment opportunity matters. And so what was Amy Kovalan talking about in her emails which sound like the bits and pieces we see after privilege has been invoked make it sound like they're sitting down only then to write a plan? It clearly can't be that, Your Honor, because as Judge Eastbrook pointed out, there is a plan. There was a written plan. There's no dispute that there was a written plan. Because there's nothing in the record indicating one way or the other, it's totally speculation, it could well be that a new plan, these plans are updated, there's a requirement that they be resubmitted every few years, as I mentioned, every two years. Every few years, I think, right. So it could be updated, could be changes, things like that. But it's just not clear because there's just nothing in the record. And that certainly can't create an issue of material fact from just the absence of anything in the record one way or the other. And Mr. Keller was not deposed. Is that correct? He was not deposed. And as the testimony in the record indicated, he seemed like a strong point person for several equal employment opportunities. At least one individual testified that Mr. Keller was always consulted, always spoken with when equal employment opportunity issues arose within the city. Do we know what his job title was? It's unclear because of just the lack of record here. If this Court has no further questions, we respectfully request that you affirm. All right. Thank you very much. Anything further, Mr. Spivak? I was going to clear up one thing. I think if the plan is over $500,000, it has to be approved. I think that's it. Regarding the Amy Colvin thing, I just wanted to raise that. I think what's interesting about it is if there was a plan, remember this came up when Hill said, I can't sign this, there's no plan. If there was a plan, Amy Colvin or King, the Commissioner of Personnel, would have said, what? Of course there's a plan. I've been using the plan. I'm the Commissioner of Personnel on the plan. I'm the Chair of the Advisory Council. Why didn't she say that? Because they're not operating a plan. And that's why Amy Colvin would have said, yeah, you've got the plan. This is all unnecessary. They weren't following any plan. It existed just as a piece of paper. It was not being followed. It was not effective. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.